[Crim. No. 1861. In Bank.—December 28, 1914.]

## THE PEOPLE, Respondent, v. JOHN RONGO, Appellant.

CRIMINAL LAW—MURDER—DELAY OF TRIAL BEYOND SIXTY DAYS—MOTION TO DISMISS—PRESUMPTION OF DEFENDANT'S CONSENT TO DELAY.—In a prosecution for murder, where the information was filed on October 12, 1912, defendant was arraigned October 14th, and the time to plead was continued to October 16, 1912, on which date defendant pleaded not guilty, and the case was set for trial December 17, 1912, but, as far as the record shows, there was no objection made by the defendant on October 16th to setting the case for trial on December 17th, although that date was beyond the sixty-day limit within which the law provides the defendant shall be brought to trial after the filing of the information, defendant's consent to the postponement will be presumed; and where defendant moved for a dismissal on the above grounds on December 16th, and it appeared, at the hearing of the motion, that the district attorney was sick and unable to appear in court, evidence being taken as to his physical condition, which showed this to be the fact, and that some days would elapse before he could undertake the trial of the case;

a further continuance becoming necessary because the district attorney had no deputy and no attorney was available who had any knowledge of the facts, and the court called attention to the fact that other cases were set for trial that would occupy all of December, and would run into January, the judge stating that, from the condition of the calendar, January 20, 1913, was "the earliest date this case can be continued to," the case then being finally set for January 21st, but no motion to dismiss after December 16th being made and defendant going to trial on January 21st without further objection, the motion to dismiss the case, because the defendant was not brought to trial within sixty days from the filing of the information, was properly denied.

ID.—SUFFICIENCY OF EVIDENCE.—In this prosecution for murder, it is held that the evidence was sufficient to justify the verdict.

ID.—MOTIVE—EVIDENCE OF ALWAYS ADMISSIBLE.—In a prosecution for murder, proof of motive, while never indispensable, is always permissible and often valuable.

ID.—ROBBERY AS MOTIVE—POSSESSION OF MONEY BY DECEASED—KNOWLEDGE OF BY DEFENDANT UNNECESSARY—ADMISSIBILITY OF EVIDENCE.—In a prosecution for murder, where the motive was asserted to be robbery, and a witness testified that he saw deceased about one and a half or two weeks before the homicide, at which time he had about one hundred and eighty dollars with him, and another witness testified that he cashed a check for the deceased a few days previous to the homicide when the deceased had a purse under his vest, which contained probably two hundred dollars, an objection to the evidence on the ground that the time when it was shown the deceased had money upon his person was too remote to give it any probative value, and that it was not shown that the defendant knew the deceased had this money, was properly overruled. The jury was not bound by the declaration of the defendant that he saw in the possession of the deceased only a silver dollar, and it would be a perfectly legitimate inference for the jury to draw that, if the deceased had any considerable sum of money upon the day of the homicide, he may have exhibited it in one or another of the saloons, or the railway ticket office, which defendant testified he and the deceased and others visited. To establish robbery as a motive, it is not at all necessary that knowledge that the deceased had money should be brought home to the assailant. The objection that the date, on which the deceased was shown to have money, was too remote, goes to the probative weight of the evidence and not to its admissibility.

ID.—MOTIVE—HABIT OF DECEASED TO CARRY MONEY—PROBATIVE FORCE OF FACTS—ADMISSIBILITY OF EVIDENCE.—The proof of the fact that the deceased was in the habit of carrying money on his person, and that he had about two hundred dollars on his person a few days before the homicide, and that he had none when the body of the deceased was discovered, affords strong evidence of motive, and there is no error in admitting such evidence.

APPEAL from a judgment of the Superior Court of Yolo County and from an order refusing a new trial. Eugene P. McDaniel, Judge presiding.

The facts are stated in the opinion of the court.

Julian & Gibbs, for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, and A. G. Bailey, District Attorney, for Respondent.

HENSHAW, J.—Defendant was convicted of murder in the second degree and was sentenced to imprisonment for the term of twenty-five years. His motion for a new trial was denied and he took his appeal from the judgment and from the order denying his motion for a new trial to the court of appeals. Owing to a disagreement of the justices of that court the case was certified to this court.

Upon appeal the first proposition presented is that the court erred in refusing to grant defendant's motion to dismiss the criminal charge on the ground that he had not been brought to trial within sixty days after the filing of the information. The information was filed on October 12, 1912. He was arraigned October 14, and the time to plead was continued to October 16, 1912, on which day he pleaded not guilty and the case was set for trial December 17, 1912. So far as the record shows there was no objection made by defendant, on October 16, to setting the case for trial on December 17, although that date was beyond the sixty-day limit. Consent will, therefore, be presumed. (*People* v. *Douglass,* 100 Cal. 1, [34 Pac. 490] ; *People* v. *Peter,* 20 Cal. App. 151, [128 Pac. 415].) Defendant moved for a dismissal on the above grounds, on December 16th. It appeared, at the hearing of the motion, that the district attorney was sick and unable to appear in court. Evidence was taken as to his physical condition which showed this to be the fact and that some days would elapse before he could safely undertake the trial of the case. A further continuance became necessary because the district attorney had no deputy and no attorney was available to take up the prosecution who had any knowledge of the facts. The court called attention to the fact that other cases were set for trial that would occupy all of December and would run into January. From the condition of the calendar and

engagements of the court the judge stated that January 20, 1913, was "the earliest date this case could be continued to." The case was finally set for January 21st. No motion was made to dismiss after December 16th and defendant went to trial on January 21st without further objection. The order was not error.

It is next contended that the evidence is insufficient to justify the verdict. The homicide occurred in the evening of May 20, 1910. Upon that day the defendant, an Italian, and two of his countrymen—the deceased and a third man—met in Sacramento. They spent the better part of the day .together, visiting saloons and drinking therein. The deceased paid for some of these drinks. In the afternoon they took a train to the town of Yolo, where they arrived at about half past seven in the evening. Defendant carried a valise containing personal effects, which he left in the baggage-room of the railway station. The three men then left town walking out on a public highway. The next morning the body of the deceased was found lying in the grass alongside of the traveled part of the highway. The ground gave evidence of a severe struggle and bore the marks of three distinct sets of foot prints. Bruises and abrasions and incised wounds— the latter as though made with a knife—were found upon the head and body of the,deceased, and in addition there was a punctured wound in the front of the body below the short ribs. It ranged upward and backward, passing entirely through the body, through the right lobe of the liver and the lower edge of the left lung. The hemorrhage resulting from this wound was the immediate cause of death. It was inflicted, according to the admissions of defendant, by a three-eighths inch iron bar or rod sharpened to a point which the third member of the party drove through the body of the deceased. Some small articles, a comb and pocket pencil, were found lying in the grass and "ten cents,. fifty cents, something like that" in money. No other money was found on the person of the deceased. The two men who were in company with deceased disappeared, this defendant abandoning his valise at the Yolo railway station. Two years afterward he was discovered, arrested, and put on trial for the murder. After his arrest he made a statement in substance as follows: He first met the third man, who he declares committed the murder, in Sacramento about a month before the day of the homicide.

He did not know his name. On the morning of the homicide the two met the deceased, and again in the afternoon. They drank together. Defendant did not notice any money in the possession of the deceased, saving one dollar, which deceased put upon a saloon counter to pay for a drink. The three together went to Yolo County, seeking work upon a ranch. They left the town in the evening for this purpose. The deceased and the third man quarreled on the train and again on the road. He did not know the cause of the quarrel other than it was ''some lady quarrel.'' They called each other vile names. They began to fight and he saw the third man jab the deceased with the iron bar. Fearful of being implicated in the crime he fled. Being ignorant of the English language and of American laws he was in terror of arrest and so abandoned his personal effects at the railway station, and walked all night, eventually going to Oregon.

A murder had been committed. Admittedly, the defendant was present at the scene of the homicide. The condition of the ground bore evidence of a protracted struggle (the deceased was a powerful man). The wild oats and grasses were trampled down for a radius of sixty yards. Undoubtedly the defendant's own story exculpates him, but it was for the jury to say whether or not that story should be believed. The evidence was therefore sufficient to justify the verdict.

The single proposition upon which the justices of the district court of appeal differed was over the admissibility of certain evidence offered and received by the court in an effort to establish a motive for the crime, which motive the prosecution asserted to be robbery. In its effort so to do, the prosecution offered and the court received the testimony of two witnesses, Nardini and Martinelli. Martinelli testified that he saw deceased about one and a half or two weeks before the homicide, and that he had about one hundred and eighty dollars with him. Nardini testified that he cashed a check for the deceased a few days previous to the homicide and at that time the deceased had a purse under his vest which contained probably two hundred dollars. Appellant's objection to the introduction of this evidence was overruled, and his motion to strike it out was denied. It is conceded, of course, that proof of motive, while never indispensable, is always permissible and often valuable. (*People* v. *Durrant,* 116 Cal. 179, [48 Pac. 75] ; *People* v. *Owens,* 132 Cal. 469, [64 Pac. 770].) The objection to this evidence, it is said, consists in this: that the

time when it was shown that the deceased had money upon his person was too remote to give it any probative value in the case, and that it is not shown that the defendant knew that the deceased had this money. So the question is asked: "But how can the possession of money be evidence of a motive for robbery when the assailant has no knowledge of the fact?" But to this there is a twofold answer: First, the jury was not bound by the declaration of the defendant that he saw in the possession of the deceased only a silver dollar, and it would be a perfectly legitimate inference for the jury to draw that if the deceased did have any considerable sum of money upon the day of the homicide he may have exhibited it in one or another of the saloons or the railway ticket office; and the second answer is that to establish robbery as a motive it is not at all necessary that knowledge that the deceased had money should be brought home to the assailant. It is not required that thugs and highwaymen shall know that their victims' purses are well lined or lined at all. They commit their crimes for what the victims may chance to have upon their persons. Again it is said that the last date upon which the deceased is shown to have money in his possession was too remote to give the evidence probative value and therefore to render it admissible; it being argued that he might have spent all of that money between the date when last it was seen upon his person, and the date of the homicide. This is quite true; but the argument goes to the probative weight of the evidence and not to its admissibility. (*Marable* v. *State,* 89 Ga. 425, [15 S. E. 453]; *State* v. *Rice,* 7 Idaho, 762, [66 Pac. 89]; *State* v. *Bailey,* 79 Conn. 589, [65 Atl. 954]; *State* v. *Shelton,* 223 Mo. 118, [122 S. W. 736]; *Spates* v. *State,* 62 Tex. Cr. 532, [138 S. W. 394].) The proof of the fact that the deceased was in the habit of carrying money upon his person; that he had about two hundred dollars upon his person a few days before the homicide; that he had none when the body was discovered, affords strong evidence of motive, and there was no error in admitting the evidence.

The judgment and order appealed from are therefore affirmed.

Melvin, J., Lorigan, J., and Angellotti, J., concurred.

Sloss, J., concurred in the judgment.