[Crim. No. 868. First Appellate District, Division Two.—February 5, 1920.]

## THE PEOPLE, Respondent, v. F. H. FRANKLIN, Appellant.

[1] CRIMINAL LAW—IDENTIFICATION OF DEFENDANT—EVIDENCE—PROVINCE OF JURY.—In a criminal prosecution it is not necessary that identification of the defendant be made positively by any one witness. It is a matter for the jury to determine from all the circumstances in evidence on the subject.

[2] ID.—WEIGHT AND CREDIBILITY OF EVIDENCE—DETERMINATION OF JURY—APPEAL.—The weight and credibility of evidence are questions for the jury to determine, and the appellate court will not interfere with that determination.

[3] ID.—PROSECUTION FOR ASSAULT—INTENT TO COMMIT ROBBERY—EVIDENCE.—In this prosecution on the charge of assault with intent to commit robbery, the assault was of such a character and under such circumstances that a reasonable deduction, if not the only reasonable one, was that drawn by the jury, that the crime committed was with the intent to commit robbery.

[4] ID.—COMMISSION OF ASSAULT—INTENT—EVIDENCE—INFERENCES.—A crime having been committed, the intent with which the assault was made may be established by proper inferences drawn from the evidence of surrounding circumstances.

---

1. Extrajudicial identification of defendant in criminal prosecution, note, Ann. Cas. 1914B, 700.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles H. Seccombe and Chas. H. Brennan for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, and R. L. Chamberlain for Respondent.

BRITTAIN, J.—The appellant was convicted on the charge of assault with intent to commit robbery. He contends the evidence was insufficient to identify him with the man who committed the assault, or to show an intent to commit robbery. His chief reliance is upon the contention regarding the question of identity. No evidence was introduced on the part of the defendant. Motion for a new trial was made and denied.

It is conceded that. a brutal and unprovoked attack was made on the complaining witness, Vickers, an old man, who, at the time of the assault, between 8 and 9 o'clock in the morning of November 28, 1918, was alone in his grocery-store in Oakland. An entire stranger entered the store and inquired about butter. He walked with Vickers to the back part of the store, where the butter was kept in a refrigerator. While they were talking a second stranger, unnoticed by Vickers, entered and, approaching Vickers from behind, struck him a violent blow with some implement over the top of the head. As Vickers turned to face his assailant, the latter said something about his mother having been insulted, and, as Vickers denied that he had ever insulted any woman, he was struck a second and a third time, when he fell to the floor. He was stunned, but almost immediately regained consciousness and staggered to his feet. A neighbor, who had approached the store, Mr. Llewellyn, entered at that moment, and the two strangers passed him going out as he went into the store. Seeing Vickers staggering toward him, Llewellyn first went to his aid, but, on learning something of what had happened, he went with Vickers to the door. No one was in sight except the two men who were identified by both Vickers and Llewellyn,

and they were walking rapidly away. Llewellyn followed them at a distance of 100 to 150 feet. He called to them, and one, claimed to be the appellant, turned and looked back at Llewellyn. The two men entered a hotel in the neighborhood, and, instead of walking across the office to the elevator, they turned sharply to the left, walking up a stairway. To Llewellyn they were identified by the woman in charge of the office as those she had brought down from the sixth floor about half an hour before, and who had registered the day before, when she had assigned them a room on the sixth floor. They did not return to their room, from which the police subsequently took their personal effects, including a suitcase, clothing, and a dirk, admittedly the property of the appellant, but for the presence of which in the room he attempted to account to the officers after his arrest. From the second floor of the hotel a window gave access to a roof, from which, in turn, through another window, a person might enter an adjoining house. At about the time the two men went upstairs in the hotel and disappeared, a woman in the adjoining house saw and talked to a man she had never seen before. He was then in the hall and was seeking a way out. After the arrest of the appellant, Vickers, Llewellyn, the woman from the hotel, and the woman who saw the stranger in her house were taken separately to the prison. While none of them would positively swear that the appellant was the man they had seen on the morning of the assault, each of them picked him from among other prisoners, and on the trial each was positive in the statement that the appellant resembled the man they had seen at the time of the crime, each expressing the belief that he was the same. Standing alone, this evidence would have been sufficient on the subject of identification. [1] It is not necessary that identification be made positively by any one witness. It is a matter for the jury to determine from all the circumstances in evidence on the subject. (*People* v. *Rolfe*, 61 Cal. 540; *People* v. *Fowler*, 30 Cal. App. 183, [157 Pac. 540].) In addition to the evidence already noticed, there was other evidence to which no objection was made, and some of that most damaging to the appellant was brought out on cross-examination of the state's witnesses. The appellant was a paroled prisoner, and, after the time of the assault involved in this case, he

was arrested in Solano County on a charge of robbery in that county. When arrested he was wearing a dark-colored mackinaw coat. The man seen by the witnesses who have been mentioned was wearing such a coat at the time of the assault. While in jail in Fairfield the appellant sold the coat for a trifling sum to one of the officers. The coat was introduced in evidence, and, while it was shown that there were other coats of a similar general appearance, other witnesses testified it looked like that worn by the man they had seen on the morning of the assault.

The other of the two men engaged in the crime was one Molin, who had been convicted on the charge of assault in connection with the attack on Vickers. While he was being taken from Fairfield to Oakland, the appellant told the officer who had him in charge that Molin was with him in Stockton on November 24th, that Molin came to Oakland by stage, after having been entrusted with the appellant's suitcase and its contents, but that he, the appellant, had gone to Napa, and had not been in Oakland for two years. The appellant did not call any witnesses to establish any of the facts thus stated by him apparently for the purpose of showing his absence from the scene of the crime. [2] The entire evidence was before the jury. The argument made on behalf of the appellant concerns its weight and credibility. These were questions for the jury to determine, and this court on appeal will not interfere with that determination. (*People* v. *Emerson,* 130 Cal. 563, [62 Pac. 1069].)

The two men, who left the store together, no doubt entered in pursuance of a common purpose. Both were strangers and had appeared in the neighborhood only the day before. From the evidence the jury might reasonably have inferred that the inquiries of the first man concerning butter were made with the intention of drawing the old man, who was alone in the store, to the rear, out of sight· of anyone passing along the street. The hour was early and few people were about. The first blow was delivered from the back of the victim. The pretense of a prior insult to the mother of him who struck the blow is too trivial to receive serious consideration. Neither she nor anyone else was called to show that any such insult had taken place, or that Vickers had ever seen or heard of her. [3] The

assault was of such a character and under such circumstances that a reasonable deduction, if not the only reasonable one, was that drawn by the jury, that the crime committed was with the intent to commit a robbery, which the insensibility of Vickers would have permitted but for the timely entrance of Llewellyn. [4] A crime having been committed, the intent with which the assault was made may be established by proper inferences drawn from the evidence of surrounding circumstances. (*People* v. *Hite*, 135 Cal. 76, [67 Pac. 57]; *People* v. *Woody*, 48 Cal. 80.) The court did not err in denying the motion for a new trial.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.