[Crim. No. 500. Third Appellate District.—June 18, 1920.]

# THE PEOPLE, Respondent, v. J. W. MOORE, Appellant.

[1] CRIMINAL LAW — FALSE PRETENSES — SUFFICIENCY OF INFORMA-
TION.—In a prosecution for obtaining cattle under false pretenses,
where it is clear from the allegations of the information that the
defendant falsely represented in all his negotiations concerning
the cattle mentioned in the information that he was acting as the
agent of certain other persons, the fact that it is alleged that the
cattle were delivered to the defendant does not render the in-
formation void in any respect, and a demurrer for uncertainty
as to the offense charged is properly overruled.

[2] ID.—RELIANCE UPON FALSE REPRESENTATION—EVIDENCE.—In such
a prosecution, it is not error to overrule defendant's objection to
a question propounded by counsel for the people to the prosecuting
witness, the purpose of which was to ascertain from the witness
if he relied upon the false representations that defendant was
the agent of certain named persons in the purchase of the
cattle.

[3] ID.—WEIGHMASTER'S CERTIFICATES—HEARSAY.—In a prosecution
for obtaining cattle under false pretenses, based upon the alleged
false representations of the defendant that he was acting as the
agent of certain named individuals in the purchase thereof, a
"Public Weigh Master's Certificate of Weight and Measure" for
the cattle, is clearly hearsay and inadmissible.

[4] ID.—ACTS OF THIRD PARTY AFTER CRIME CONSUMMATED—EVI-
DENCE.—In such prosecution, evidence of what the wife or some
third party might have done after the crime had been fully com-
pleted and consummated by defendant is neither relevant nor
material to the issue involved in the case.

[5] ID.—INTENT OF DEFENDANT—EVIDENCE—ERROR WITHOUT PREJU-
DICE.—Although the defendant in such a prosecution has the right
to state to the jury his intent at the time he procured the cattle,
the ruling of the trial court in sustaining an objection to a ques-
tion asked the defendant concerning the intent with which he did
the act does not constitute error prejudicial to defendant's case,
where he testifies very fully as to the transaction and denies
repeatedly ever having made the alleged fraudulent represen-
tations, and it is apparent from the evidence that a further
statement by him to the effect that at the time he got the

5. Right of accused to testify as to his intent, notes, 12 Ann. Cas.
8; Ann. Cas. 1912D, 1045; 23 L. R. A. (N. S.) 367; 34 L. R. A.
(N. S.) 323.

cattle from the prosecuting witness he did not intend to cheat or defraud him out of the cattle would not have changed the views of the jury or affected the result.

[6] ID.—CONFLICTING EVIDENCE — VERDICT — APPEAL. — In this prosecution for obtaining cattle under false pretenses, based upon the false representations of the defendant that he was acting as the agent of certain named individuals in the purchase of the cattle of the prosecuting witness, the jury having disbelieved the story of the defendant, and the evidence against the defendant having been sufficient to support the verdict, that decision was final and conclusive on appeal.

[7] ID.—ADMISSION OF EVIDENCE WITHOUT OBJECTION—ARGUMENT— MISCONDUCT OF DISTRICT ATTORNEY.—In such prosecution, evidence showing that the prosecuting witness received nothing from the defendant for his cattle having been received without objection, the prosecuting attorney was not guilty of misconduct in calling the jury's attention to that fact in his closing argument.

APPEAL from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge. Affirmed.

The facts are stated in the opinion of the court.

Levey & Lipman and Mannon & Mannon for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

NICOL, P. J., *pro tem*.—The defendant J. W. Moore was convicted in the superior court of Mendocino County of the crime of obtaining property by false pretenses, and prosecutes this appeal from the judgment and order denying his motion for a new trial.

1. Appellant claims that the court erred in overruling his demurrer to the information, the objections to the information being that it is not direct and certain as to the offense charged, and that it fails to disclose any natural or causal connection between the alleged false representations and the delivery of the property to the defendant. The charging part of the information is as follows: "The said defendant J. W. Moore on the 30th day of June, A. D. nineteen hundred and nineteen, at the said Mendocino County, State of California, and before the filing of this information did then and there devising and intending by unlawful ways and means and by false and fraudulent pre-

tenses and representations to obtain and get into his custody and possession the goods and personal property of W. H. Edmands, with intent to cheat and defraud and thereby then and there willfully and unlawfully, knowingly and designedly, falsely and fraudulently pretend and represent to W. O. Edmands that he the said J. W. Moore, was then and there buying cattle for Lewis and McDermott, and that he the said J. W. Moore was then and there authorized by the said Lewis and McDermott to negotiate for the purchase of, and to purchase, cattle for said Lewis and McDermott as their agent, whereas in truth and in fact the said J. W. Moore was not buying cattle for the said Lewis and Mc-Dermott, nor anyone acting in their behalf, to negotiate for the purchase of, nor to purchase, cattle as their agent, or otherwise, as he the said J. W. Moore, then and there well knew. And the said W. O. Edmands then and there believing the said false and fraudulent pretenses and representations so made, as aforesaid by the said J. W. Moore, to be true, and being deceived thereby, was induced by reason of the said false and fraudulent pretenses and representations so made as aforesaid, to deliver, and did then and there deliver to said J. W. Moore fifty head of beef cattle of the value of about Five Thousand Ninety Five and No/100 Dollars lawful money of the United States of America and of the personal property of said W. H. Edmands, and the said J. W. Moore then and there, and by means of the said false and fraudulent representations so made as aforesaid, did then and there willfully and unlawfully, knowingly, designedly and fraudulently receive and obtain from said W. O. Edmands the said goods and personal property hereinbefore described and set forth, with the intent to cheat and defraud said W. H. Edmands of the same and the said J. W. Moore did then and there willfully, unlawfully and fraudulently take and carry away the same. Whereas in truth and in fact the said pretenses and representations so made as aforesaid was and were then and there in all respects utterly false and untrue and fraudulent and whereas in truth and in fact the said defendant J. W. Moore well knew the said pretenses and representations so made by himself as aforesaid to be utterly false and untrue and fraudulent at the time of making the same. And the said de-

fendant J. W. Moore then and there in the manner and by the means aforesaid did then and there and thereby willfully and unlawfully, fraudulently, knowingly and designedly cheat and defraud the said W. H. Edmands of the said goods and personal property hereinbefore described and set forth. All to the damage of said W. H. Edmands. . . . ''

[1] In our opinion the demurrer was properly overruled. It is clear from the allegations of the information that the defendant falsely represented that in all his negotiations concerning the cattle mentioned in the information he was acting as the agent of Lewis and McDermott, and the fact that it is alleged that the cattle were delivered to the defendant does not render the information void in any respect whatever, for if it were true that the defendant in all his negotiations concerning the purchase of the cattle was the agent of Lewis and McDermott, then it was proper that he should receive the cattle.

In the case of *People* v. *Griesheimer,* 176 Cal. 44, [167 Pac. 521], the defendant was convicted of the crime of obtaining money by false pretenses under section 532 of the Penal Code, and it was claimed by the defendant that the information did not show the causal connection between the false pretenses and the parting with the property by the prosecuting witness. The court in passing upon this objection uses the following language: ''We are of the opinion that as against the defendant's general demurrer the information should be held sufficient on appeal. While there is no direct allegation that the money was paid to the defendant as a subscription or loan to the 'Fatherland Magazine,' a reader of the information could hardly draw from it any other inference than that the payment was made for such purpose. It may be conceded that a direct allegation to this effect would have been more in accord with technical requirements. But what was intended to be charged in this connection is perfectly plain from the language in fact used, and no person of common understanding could fail to understand that it was substantially charged, by necessary inference at least, that the money was paid because of the alleged false representations, and for the purpose suggested thereby. Section 4½, article VI, of the constitution provides that 'no judgment shall be set aside, or new trial granted, in any case,

. . . for any error as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' We are satisfied that to reverse the judgment on this ground would be to entirely ignore this provision of our constitution.''

Applying this language of the supreme court to the information in the case at bar it is equally clear that no person of common understanding could fail to understand from reading the information that the defendant in negotiating for the purchase of the cattle falsely represented and pretended to W. O. Edmands that everything he was doing, he was doing as the agent of Lewis and McDermott, and that by these false and fraudulent representations and pretenses he obtained the cattle and that the prosecuting witness was thereby defrauded out of his property.

In *People* v. *Haas,* 28 Cal. App. 182, [151 Pac. 672], the court in passing upon the sufficiency of an information for obtaining money or property by false pretenses said that ''an indictment or information charging the crime of obtaining money or property by false representations and pretenses must show the facts as to what the pretenses were; that there was an intent to defraud, the name of the person defrauded, with a description of the property and a statement of its value, together with an allegation that the false and fraudulent pretenses charged were relied upon by the party who claims to have been defrauded, and that he was induced thereby to part with his property.'' In the case at bar all these necessary averments are fully alleged and the information in this case is as full and complete as the information that the court in *People* v. *Haas* held to be sufficient. (See, also, *People* v. *Hines,* 5 Cal. App. 122, [89 Pac. 858] ; *People* v. *Donaldson,* 70 Cal. 116, [11 Pac. 681].) Tested by the principles announced in the foregoing cases the information before us in this case is ample and sufficient. ''It contains every essential allegation necessary to charge the defendant with the commission of the offense and is calculated to fully acquaint him with the nature of the charge.'' (*People* v. *Hines, supra.*)

[2]  2. Complaint is made that the court erred in overruling defendant's objection to the following question propounded by counsel for the people: "Did the statements, he was representing Lewis and McDermott have any influence with you in bringing about this trade?" We see no error in the court's ruling. Rightly understood the question had the effect of simply asking the witness if he relied upon the false representations that defendant was the agent of Lewis and McDermott in the purchase of the cattle.

[3]  Defendant offered in evidence what is termed the "Public Weigh Master's Certificate of Weight and Measure" for these cattle. The court sustained an objection to the same and in this ruling we think the court was correct, as the certificate was clearly hearsay and inadmissible. [4] Appellant also contends that the court erred in sustaining an objection to the following question: "Did you or not on or about the second day of July, 1919, send your wife Rosa Moore to the Bank of California in San Francisco to arrange for the payment of this note?" We do not consider that this alleged act of the defendant was relevant or material to the issue involved in the case. To have allowed this question to be answered would have been to allow evidence of the act of a third party performed after the crime had been fully completed and consummated. Furthermore, the matter sought to be elicited by this question would be self-serving in character and would be irrelevant to any issue in the case, and we also find no error in the refusal of the court to allow the witness Friedman to testify in regard to a letter claimed to have been written by him to the prosecuting witness after the crime had been fully completed, and which had reference to an offer by defendant to pay to the prosecuting witness a certain amount of money which was claimed to have been received as part of the proceeds of the cattle.

[5]  An objection was sustained to the following question asked the defendant: "Did you intend, Mr. Moore, at the time when you got these cattle from Mr. Edmands to cheat or defraud Mr. W. O. Edmands or W. H. Edmands out of those cattle or any of them?" We think this question was proper and that the defendant should have been allowed to answer it. "The general rule is well settled that, under our

system, a witness may be examined as to the intent with which he did a certain act, when that intent is a material thing in the action.'' (*Fleet* v. *Tichenor*, 156 Cal. 343, [34 L. R. A. (N. S.) 323, 104 Pac. 458]; *Wohlford* v. *People*, 148 Ill. 296, [36 N. E. 107]; *Cummings* v. *State*, 50 Neb. 274, [69 N. W. 756]; *Kerrains* v. *People*, 60 N. Y. 221, [19 Am. Rep. 158]; *People* v. *Farrell*, 31 Cal. 576; 1 Jones on Law of Evidence, secs. 170, 170a; 12 Cyc. 403.) But, while we think the defendant had the right to state to the jury his intent at the time he procured the cattle, still we do not consider that the ruling of the court on this question resulted in any serious error to the defendant. We are satisfied from an examination of the record that this error was not prejudicial to the defendant's case. He testified very fully as to the transaction. Denied repeatedly of ever having told Edmands that he was acting for Lewis and Mc-Dermott; said that he told him that he was in business for himself and buying for himself. His testimony was utterly irreconcilable with the theory of the presence of any intent to cheat or defraud Edmands out of his cattle. It is perfectly plain from a full examination of the evidence given by the defendant that a further statement by him, to the effect that at the time he got the cattle from Mr. Edmands he did not intend to cheat or defraud him out of the cattle, could not have changed the views of the jury or affected the result. (*Fleet* v. *Tichenor*, 156 Cal. 343, [34 L. R. A. (N. S.) 323, 104 Pac. 458].) To reverse the judgment for this error would be to ignore section 4½ of article VI of the constitution, which provides that ''No judgment shall be set aside, or new trial granted, in any case, on the ground of . . . the improper admission or rejection of evidence, . . . unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.''

The objections to the questions asked W. O. Edmands as to offers of payment made at the meetings with defendant after the transaction, at the police station in Berkeley and before his arrest, were properly sustained by the court. The crime was complete at the time the defendant perpetrated the fraud upon Edmands and thereby procured his cattle.

[6]  3. It is next claimed that the verdict is contrary to the evidence. The evidence sufficiently shows that the defendant falsely represented to Edmands that he was acting for Lewis and McDermott, and after so deceiving him, the cattle were taken over by the defendant, or as the information alleges were "delivered" to him. It appears that Edmands relied upon these false representations, that he was the agent of Lewis and McDermott, and was thereby defrauded out of his property. The gist of the offense lies in the making of the false pretenses which were made by the defendant for the purpose of defrauding Edmands and upon which Edmands relied and was thereby deceived and defrauded out of his cattle. Defendant on the trial claimed that the cattle had been actually sold to him and that he did not receive their "delivery" to himself by reason of any false representations that he was the agent of Lewis and McDermott.

This defense of the defendant was by the verdict of the jury rejected and this verdict is final and conclusive. "Undoubtedly the defendant's own story exculpates him, but it was for the jury to say whether or not that story should be believed. The evidence was therefore sufficient to justify the verdict." (*People* v. *Rongo,* 169 Cal. 71, [145 Pac. 1017].) In *People* v. *Emerson,* 130 Cal. 562, [62 Pac. 1069], it is said: "For if the evidence which bears against the defendant, considered by itself, and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive."

[7]  4. Finally, the appellant contends that the assistant prosecuting attorney was guilty of misconduct in his closing argument to the jury. But there is no merit in this contention. There was a proper basis in the evidence in the case upon which the attorney had the right to call the jury's attention to the fact that Edmands had received nothing from the defendant for his cattle. The prosecuting witness, W. O. Edmands, answered without objection to questions propounded by counsel for defendant as follows: "Q. You also testified that this amount set out in that paper, $5,095, was not paid, did you not? A. No, nothing; none of it has

been paid. . . . Q. Mr. Edmands, in that conversation that you had with Mr. Moore on the fourteenth day of July, 1919, at Berkeley, California, and on the fifteenth day of July, did or did not Mr. Moore offer to pay you in full? . . . A. No. . . . Q. I will ask you if at that time an offer was not made to you for payment in full of this note by Mr. Terrill representing Mr. Moore, the defendant in this case? A. No.''

This evidence, as above stated, was received without objection, and it furnishes a proper basis for all the argument of the assistant prosecuting attorney which was objected to by the defendant.

The judgment and the order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1920.

All the Justices concurred, except Sloane, J., who was absent.