[Crim. No. 872. Third Appellate District.—September 29, 1925.]

## THE PEOPLE, Respondent, v. JOE HAY, Appellant.

[1] CRIMINAL LAW—UNLAWFUL POSSESSION OF INTOXICATING LIQUOR—POSSESSION OF PREMISES—EVIDENCE—VERDICT—APPEAL.—In this prosecution for the unlawful possession of intoxicating liquor, while the defendant's testimony as to the possession by another person of the premises where the liquor was found would, if believed and accepted by the jury, have exonerated him, the facts and circumstances presented by the People in support of the charge were not so wanting in persuasive force or not characterized by any such inherent weakness or improbability as to make the case, so far as the evidence was concerned, one of law, or one that would warrant the appellate court in declaring, as a matter of law, that the verdict of guilty was devoid of sufficient support.

[2] ID.—CONFLICTING EVIDENCE—QUESTION OF FACT FOR JURY.—Where in a criminal case the evidence which bears against the accused, considered by itself and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone the appellate court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive.

[3] ID. — LETTERS ADDRESSED TO DEFENDANT — PAROL EVIDENCE.—In this prosecution of a Chinaman for the unlawful possession of intoxicating liquor, it was not error for the trial court to permit the police officer who made the raid to testify that envelopes found in the room in which some of the liquor was found, and which contained letters written in Chinese, bore the name, written in English, of defendant, and such testimony did not contravene the mandates of section 1937 of the Code of Civil Procedure, which provides, *inter alia*, that where a writing is sought to be proved the original thereof must be produced and proved, except as provided in sections 1855 and 1919 of said code.

[4] ID.—MISCONDUCT OF DISTRICT ATTORNEY—CROSS-EXAMINATION OF DEFENDANT—SALE OF PERSONAL PROPERTY.—In such a prosecution, prejudicial error may not be predicated upon the facts that defendant is asked on cross-examination, and over his objection is required to answer, the question whether, shortly after his arrest on the charge alleged in the information, at the sheriff's office, in the presence of the sheriff, he directed a colored girl, who was in his employ, to sell certain groceries then situated in the

1.  See 14 Cal. Jur. 750.
2.  See 8 Cal. Jur. 589.

premises connected with the room where a part of the liquor was found, to which defendant answers that, on the occasion mentioned, he directed the girl to sell certain sugar and coffee which he had in his own adjoining part of the building, where it does not appear that the district attorney asked the question with knowledge of the fact, if it was a fact, that defendant, when directing the sale of the sugar and coffee as indicated, had reference to sugar and coffee situated in his part of the premises and not in the part connected with the room where the liquor was found.

[5] ID.—POSSESSION OF PREMISES — SALE OF PERSONAL PROPERTY — CIRCUMSTANTIAL EVIDENCE—JOINT POSSESSION.—In such prosecution, if it was true that the defendant, at the time stated, directed groceries or other personal property situated, when he was arrested, in the part of the building connected with the room where the liquor was found, to be sold, the question constituted proper cross-examination upon his denial of having possession or control of that part of the building; and whether the unlawful possession of the liquors by defendant was several or joint, he would in either case be subject to punishment for such unlawful possession.

---

(1) 16 C. J., p. 930, n. 93, p. 931, n. 95, 98; 17 C. J., p. 255, n. 56; 33 C. J., p. 761, n. 53, p. 786, n. 44, 46, 51, 54.  (2) 17 C. J., p. 261, n. 72, p. 264, n. 89.  (3) 16 C. J., p. 616, n. 79 New.  (4) 17 C. J., p. 314, n. 69.  (5) 33 C. J., p. 584, n. 2 New; 40 Cyc., p. 2484, n. 74, p. 2493, n. 28.

APPEAL from a judgment of the Superior Court of Yuba County and from an order denying a new trial. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin and W. P. Rich for Appellant.

U. S. Webb, Attorney-General and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant, a Chinese, was convicted by a jury in the superior court of the county of Yuba of the crime of unlawfully having in his possession, on or about the nineteenth day of March, 1925, a quantity of intoxicating liquor, of the prohibited alcoholic content, such possession not being for nonbeverage purposes, under an information

charging said crime and also charging two previous convictions of a like offense, one in the police court in and for the city of Marysville, county of Yuba, and the other in the superior court in and for said county.

A motion by the accused for a new trial upon a number of the statutory grounds was denied, and this appeal is from the judgment of conviction and the order denying the motion for a trial *de novo.*

The complaint against the result reached below is that the verdict fails of sufficient evidentiary support and that the court erroneously and with prejudice to the rights of defendant admitted certain evidence and also permitted inquiry to be made by the district attorney into a matter having no pertinent relation to the case and which tended to prejudice the accused in the minds of the jurors.

The evidence discloses that the defendant had under lease for a term of five years a certain building situated and fronting on First Street, near Oak Street, in the city of Marysville. This building was divided into two large rooms or compartments, and the entrances thereto from the street were separate from or independent of each other. One was numbered "318" and the other "320." In No. 318 the defendant conducted the business of a restaurant. The other, No. 320, was, for a time from February or March, 1924, to a date not shown by the record, occupied by one Frank Donnelly under a lease from defendant, made either in February or March, 1924, and for a period of time, including the date of the discovery by the officers of the intoxicating liquor for the alleged possession of which the defendant was arrested and prosecuted to conviction under the information, in the possession, so defendant testified, of and occupied by one Magee. It appears also that a man named McKeevey had something to do with the premises (No. 320) after Donnelly gave up possession thereof, but was not in charge or present at the time the liquor was found in the place.

Taking up now the point that the verdict is without sufficient support, it should be explained that there are several small rooms in the rear of the building, all separated from the two larger or main rooms by a partition; that the room in which the liquor was found by the officers making the "raid" on the premises was situated directly in the rear

of the part of the building occupied by the defendant—
No. 318 First Street; that there was a door opening into
one of the smaller rooms from the Donnelly compartment
(No. 320); that this door (No. 320) was always kept
bolted by a spring-lock and could be opened in no other
way than by means of a string attached to the spring-lock
extending through the partition into and ending in the
defendant's compartment, where only the string could be
manipulated so as to unlatch the lock. The smaller room
so referred to was situated directly back of or in the rear
of defendant's compartment from which, as stated, said
smaller room was separated by a partition. As counsel for
the defendant say in their brief, "the evidence showed that,
while a person in room No. 320, where gambling and
drinking were going on, could, by pushing the button, signal
a man standing in the small rooms 'X' and 'Y' (thus two
of the smaller rooms above referred to were designated on
the plat prepared by the county surveyor and used at the
trial) and into which the defendant could enter from his
room, No. 318, yet there was no way whereby a person
could signal in the reverse order—that is, from either room
'X' or 'Y,' or from the compartment, No. 318, to compart-
ment 320." It was also made to appear that the smaller
rooms could be entered from the rear of compartment 320.
This entrance led into a small room, thence into several other
small rooms, including the one in which the liquor was
found. At the time of the "raid," a small room immediately
in the rear of the Donnelly or 320 compartment (a room
other than the one in which the particular liquor in question
here was found) contained a stock of liquors of various
kinds. The evidence further shows that an electric bell was
maintained in the room situated directly back of the de-
fendant's compartment and in which the liquor referred to
in the information was found. In brief, the interior of the
lower floor of the building had been and was with evident
design so arranged as to facilitate the successful prosecution
clandestinely of a "boot-legging" business until such time,
at least, as the authorities might, by an investigation pur-
sued with more than the usual alertness and vigor, discover
the unlawful traffic in intoxicants which had unquestionably
been carried on therein.

Police Officer Allen, who led the raid on the premises on the occasion in question, testified that in the room in which there was found a quantity of intoxicating liquors he also saw numerous other articles of personal property, including a bed, with bedclothing, "junk, Chinese medicine, shoes, hats, Chinese stamps and several photographs of Joe Hay (defendant) and several letters addressed to Joe Hay." The envelopes containing the letters referred to were addressed in English, but the letters themselves were in the Chinese language.

The defendant was not in any of the smaller rooms or in compartment No. 320 at the time of the raid and when arrested shortly after the raid was in the restaurant conducted by him in the larger room, numbered 318 First Street. The defendant testified that Frank Donnelly, above mentioned, had under lease all of compartment 320 and all the smaller rooms in the rear of both compartments. Explaining the presence in the small room referred to of the bed and the letters, photographs of himself and other personal property belonging to him, he testified in effect that he indifferently suffered said articles to "lie around" anywhere about the premises, and not because, at the time of the raid, or for some time prior thereto, he occupied said room as his sleeping apartment; that a Chinese cook employed at "some club" in the city of Marysville, had been and was at the time of the raid occupying the room as his sleeping apartment. He did not give the name of the "Chinese cook."

The evidence, of which the substance is above presented, while not of a direct character as in proof of the guilt of the accused, is circumstantially such as to preclude the declaration by this court that it does not afford sufficient support to the verdict. The defendant was admittedly the lessee of the entire building, and since, as seen, Donnelly to whom he sublet the No. 320 compartment had, previous to the raid and the arrest, abandoned his lease and possession of said compartment, it was for the jury to determine the vitally important question whether Donnelly had transferred his sublease and rights thereunder to the said Magee, or the defendant, upon Donnelly's surrender of possession, sublet to Magee, or whether the latter was a mere employee of defendant at the time of the raid. This was really the pivotal

question in the case, so far as the defendant's defense was
concerned; and, the jury having found the defendant guilty,
it must be assumed that they rejected his testimony as to
Magee's possession of No. 320, the same being wholly un-
corroborated except in so far as the fact of the maintenance
of a partition between the two compartments might be re-
garded as corroborative of his testimony in that respect.
The jury, of course, had the right to reject that testimony
or, for that matter, any testimony given in the case, not arbi-
trarily, however, but in the exercise of their right and duty
to pass upon the question of the credibility of the witnesses,
or, which is the same thing, the weight to which their testi-
mony was entitled. Viewing, then, as we may, the testi-
mony offered in support of the defense as having been
rejected by the jury as unworthy of belief, we have left in
this record nothing but circumstances singularly incrim-
inatory as against the accused, and from which, indeed, the
jury, if accepting them as verity, as evidently they did so
accept them, could well have been pursuaded to the con-
viction, beyond a reasonable doubt, that the defendant was
guilty under the information. [1] At all events, while
the defendant's testimony would, if believed and accepted
by the jury, have exonerated him, the facts and circum-
stances presented by the People in support of the charge
are not so wanting in persuasive force or not characterized
by any such inherent weakness or improbability as to make
the case, so far as the evidence is concerned, one of law, or
one that would warrant this court in declaring, as a matter
of law, that the verdict is devoid of sufficient support.
[2] The rule is too well settled hardly to require repetition,
that where in a criminal case the evidence which bears
against the accused, considered by itself, and without regard
to conflicting evidence, is sufficient to support the verdict,
"the question ceases to be one of law—of which alone this
court has jurisdiction—and becomes one of fact upon which
the decision of the jury and the trial court is final and con-
clusive." (*People* v. *Emerson,* 130 Cal. 562 [62 Pac. 1069];
see, also, *People* v. *Rongo,* 169 Cal. 71 [145 Pac. 1017], in
which a conviction was obtained entirely upon circumstan-
tial evidence no more powerful in probative force, appar-
ently, than the evidence pointing to guilt in this case.)
We are firmly of the conviction that the case here, as to the

evidentiary phase thereof, is peculiarly one which should be left where the jury left it. The finding of the personal belongings of the defendant in the small room furnished with sleeping conveniences constituted a circumstance which, when considered with the admitted fact that he was the lessee of the entire building and also the undisputed fact that the lower floor thereof was arranged for the evident purpose of circumventing discovery by the officers of the law of the unlawful business therein conducted, tended strongly to show that, at the time of the raid, the defendant was occupying, as his sleeping apartment, said room, and was, therefore, in possession thereof and its contents, including the liquors therein found. Indeed, that circumstance would itself warrant the inference that he was in possession of the whole of the premises and all that they contained. Moreover, his testimony that said room—the room in which his letters, photographs and other articles of personal property were found—was not occupied by him or in his possession is anything but satisfactory, even as it is presented here. He said, as we have seen, that the room had been and was occupied by a Chinese employed as a cook for "some club," and that the box containing the articles belonging to him was left in that room as a matter of convenience—at least, that was the natural inference from his testimony in that particular. He did not, however, give the name of the Chinese cook or the name of the club at which he was employed or where it was located. The jury could justly have concluded, as it is probable they did conclude, that, if the defendant's testimony in that regard was true, he would have known and, if not directly asked a question calling for it, have voluntarily given the name of the "Chinese Cook," and probably the place at which he was then employed. As a matter of common knowledge, it is known that in small communities, where the Chinese population is limited to a comparatively few persons, every Chinese is acquainted with every other Chinese residing in such communities and knows his occupation and place of employment. It is also worthy of note, in this connection, that the Chinese so referred to by defendant was not called as a witness in the case, nor was there any explanation given for the failure to call him, if, in point of fact, he

was not a mythical individual conjured up by the defendant to sustain an equally mythical alibi, so to speak.

[3] It is next contended that it was error prejudicial to the rights of the accused to allow the police officer who made the raid to testify that the envelopes found in the room in which some of the liquors were found and which contained letters written in Chinese, bore the name, written in English, of the defendant. · The ground of the objection to that testimony was and is that it contravened the mandates of section 1937 of the Code of Civil Procedure, which provides, *inter alia*, that where a writing is sought to be proved the original thereof "must be produced and proved, except as provided in sections 1855 and 1919." (See, also, secs. 1829 and 1830, Code Civ. Proc.) It is clear that the testimony objected to here does not come within the purview of said sections. This was not a case of proving the contents or terms of a writing, but one where the purpose was to prove a fact which the witness knew from his own knowledge or of which he derived knowledge from or through his own perceptions. (Code Civ. Proc., sec. 1845.) As reasonably might it be be contended that, to prove an inscription on a stone monument or a name or words carved on a boulder of great weight and embedded in the ground, it would be necessary to produce in court the stone or boulder itself. The rule invoked by the defendant against the legal propriety of the testimony here objected to is founded upon the proposition that, where a writing or its terms are vital to the determination of the ultimate fact or issue, the instrument itself, if available to the party relying upon it, must be produced, since it affords the greatest certainty of its real terms or contents, thereby averting the necessity of relying, for proof of the instrument as written, upon the treacherous human memory or the testimony of designing persons interested to prove an instrument of vitally different import from that intended or upon a copy from which, either advertently or inadvertently, important provisions may have been deleted. It is obvious that the reason for the rule can have no application in the present instance.

A like objection was made to the testimony of the same witness that he found in said room a number of photographs of the defendant. The ground of the objection was subsequently swept aside by the introduction in evidence of the

photographs themselves. It may parenthetically be observed that the objection that the photographs themselves constituted the best evidence of the fact that they were of the accused lines up nearer to the rule requiring the best evidence of a fact of which the case is susceptible than is the like objection as to the name written on the envelopes.

[4] The defendant was asked on cross-examination, and over his objection was required to answer, the question whether, shortly after his arrest on the charge alleged in the information, at the sheriff's office, in the presence of the sheriff, he directed a colored girl, who was in his employ, to sell certain groceries then situated in No. 320 First Street. The answer was that, on the occasion mentioned, he directed the girl to sell certain sugar and coffee which he had in his own part of the building. The asking of the question was at the trial and is here assigned as prejudicial misconduct on the part of the prosecutor. It does not appear that the district attorney asked the question with knowledge of the fact, if it was a fact, that the defendant, when directing the sale of the sugar and coffee as indicated, had reference to sugar and coffee situated in his part of the premises and not in the part known as No. 320. It is, therefore, to be assumed that he had no such knowledge at the time he propounded the question and asked it in good faith, We cannot, therefore, say that the asking of the question involved misconduct. [5] If it was true, however, that the defendant, at the time stated, directed groceries or other personal property situated, when he was arrested, in No. 320, to be sold, the question constituted proper cross-examination upon his denial of having possession or control of that part of the building, since that fact would tend in a measure to show that he did at the time of the raid have some personal interest in the business conducted in No. 320, a fact which would tend in some degree to show that the liquors therein found were in his possession, whether solely or jointly with some other person, is of no consequence, for, whether the unlawful possession of the liquors by the defendant was several or joint, he would in either case be subject to punishment for such unlawful possession.

No other points than those above considered are made. The judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.