[Crim. No. 6908. Second Dist., Div. Two. May 16, 1960.]

THE PEOPLE, Respondent, v. MARY ELIZABETH RUSH, Appellant.

Vaughn & Morrow for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant appeals from a judgment convicting her of assault with a deadly weapon (Pen. Code, § 245), also from orders denying her motions for new trial and for probation. The last mentioned order is not appealable (*People* v. *Young*, 105 Cal.App.2d 612, 613 [233 P.2d 155]; 3 Cal.Jur.2d, § 96, p. 548). Having found defendant guilty, the court made the crime a misdemeanor by sentencing her to imprisonment in the county jail for one year with good time allowed if earned.

Appellant's counsel argue insufficiency of the evidence and that the trial court "erroneously applied a test of whether in view of William Mitchell's testimony appellant was in fact justified in firing the gun," which quoted phrase proves to be but another way of asserting that the evidence established self-defense as a matter of law. Appellant's arguments ultimately result in a plea for appellate review of conflicting evidence and the appropriate inferences to be drawn therefrom. This is an unattainable objective, for the duty of a court of review begins and ends with a determination of whether there is substantial evidence, contradicted or uncontradicted, to sustain the express or implied findings of fact. It is true in criminal as well as civil cases that the court is not bound to accept testimony of the appellant which is not actually convincing even though it be uncontradicted. "It must be considered in connection with other testimony and reasonable inferences therefrom, and the rule that the jury properly may reject part of the testimony of a witness,

though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material." (*Nevarov* v. *Caldwell,* 161 Cal. App.2d 762, 777 [327 P.2d 111].) See also *People* v. *Matlock,* 51 Cal.2d 682, 695 [336 P.2d 505]. ▉ "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) See also *People* v. *Poindexter,* 51 Cal.2d 142, 148 [330 P.2d 763].

The background of the crime, constructed from evidence which is uncontradicted or most favorable to respondent and assuming in favor of the judgment the existence of every fact which a court could have reasonably deduced from the evidence (*People* v. *Daugherty, supra,* 40 Cal.2d 876, 885), is as follows. Defendant, a married woman who was separated from her husband, had been living with the victim, William J. Mitchell, in illicit relationship for some months prior to the shooting which occurred on April 24, 1959. About 9 p.m. when Mitchell was at defendant's home she received a telephone call and told him that her husband was in town and was coming over to the house. Mitchell declared that he would not stand for it, a quarrel ensued, she ordered Mitchell out of the house, he refused, and the shooting followed. Immediately after that occurred appellant called the police. Upon arrival of Deputy Sheriff Brown he inquired, "[w]hat happened here?" and defendant replied, "I just shot him, that's what happened."

The record contains three versions of the crime, given respectively by the victim, the defendant and defendant's son-in-law Earl L. McGowan. McGowan, a defense witness, gave a succinct account as follows: "Well, I was sitting on the couch and she kept telling him to get out, he wouldn't come and I asked him to get out and go out and he wouldn't; so she just reached in the clothes closet and shot him."

Mitchell and defendant agreed that Mitchell was sitting in a chair in the living room when she fired at him. He said that she was angry and went from that room down the hall, came back and said "get out of my house"; he saw a gun flash and two shots were fired while he was sitting in the chair; he ran to the door and while trying to get out was shot in both legs. (He was seriously injured.)

Defendant testified that when Earl, the son-in-law, arrived

he sat down; Mitchell at the same time was trying to get something out of his pocket and grabbed at her; she started for the other room to call the police and Mitchell kicked her; as he did so "he had his hand in his pocket still trying to get it out. So this linen closet right here, so when he kicked at me I stumbled into this end table here, so the gun was in the closet——— Q. At the time when he kicked at you did he reach for his back pocket? A. Yes, he was reaching for his back pocket. Q. Did you see a bulge in his back pocket? A. Yes, he came back from the car. . . . Q. Between the time that he made this supposed kicking motion at you and the time you got the revolver, how long a time went by? . . . A. Well, the closet is right here, I was—and the place is really close—I was right there. As soon as he kicked me I bumped against the table, straightened up, I just got the gun out then. . . . Q. Was he seated in this chair when you shot at him? A. Yes. Q. Were you standing about here? A. Yes. Q. How many feet is it from where you shot at him to where Mr. Mitchell was seated? A. I would say about five, I guess. Q. Did you aim at any particular portion of his body? A. Yes, at his feet. . . . A. Why did I shoot him? Q. Yes. A. Because he had kicked at me and he was trying to get whatever he had in his pocket to hit me. Q. He was seated at this time, though, wasn't he? A. Yes. . . . A. I fired all three of them while he was sitting on a chair."

 Obviously there was an assault with a deadly weapon. So appellant's counsel finally comes to rest upon a claim of self-defense concerning which the opening brief says that "appellant was erroneously deprived of a proper analysis of the facts in ascertaining if circumstances existed to warrant a reasonable woman to believe that she was in danger." The brief also says: "The transcript is patently pregnant with circumstances that show a reasonable woman in appellant's position was plainly justified in believing at the moment she fired the shots that she was in peril of receiving great bodily injury as a result of the conduct of William Mitchell. . . . This conclusion is inevitable because the physical circumstances show something else to be the facts other than as testified to be the prosecution witness. . . . The result reached by the court with the evidence in the state as shown by the record could only be reached as the court applied a misconceived test of conduct. . . . The inference created by the prosecution that this shooting was without reason as far as the conduct of William Mitchell is concerned, is completely

dispelled and overwhelmingly rebutted by the other facts and circumstances including some of the testimony of William Mitchell.'' Back of these accusations lies evidence of defendant, mostly contradicted by Mitchell and unsupported by corroboration, designed to show that she acted in self-defense and that the trial judge (who was sitting without a jury) drew the wrong inferences. Reference is made to such testimony as the following: That Mitchell had often threatened and tried to kill defendant; that on that evening he had pushed her onto the bed and had hit her with his hand as she got up; had also said ''I'm going to kill you tonight''; on several previous occasions she had seen his blackjack, he would take it out of his pocket and lay it on the table; she did not see the blackjack that night but ''he had something in his pocket''; ''he never had anything to fight with, he would always fight with his feet or his hands''; she shot him ''[b]ecause he had kicked at me and he was trying to get whatever he had in his pocket to hit me''; she was and is afraid of him and that is why she stayed with him; ''[b]ecause I was afraid of him. He say he was going to kill you for everything that you do, he say he is going to kill you.''

Counsel argue in effect that the trial judge was obligated to accept this evidence and that it spells self-defense within the purview of the authorities. Not so.

*People* v. *Lopez,* 32 Cal.2d 673, 674 [197 P.2d 757]: ''Defendant complains, however, that the court gave an erroneous instruction on the law of self-defense. The jury was told that if they believed that 'without any overt act or physical demonstration upon the part of Robert Fernandez sufficient to warrant the defendant, as a reasonable man, in believing that he was in great bodily danger, he, the defendant, fired a shot at said Robert Fernandez and hit him, such shooting under such circumstances was not justifiable.'

''Defendant criticizes the use of the word 'great' in the instruction and argues that it unduly restricts his right of self-defense in a prosecution for assault with a deadly weapon. He concedes that similar instructions have been approved in homicide cases (see *People* v. *Emerson,* 130 Cal. 562, 568 [62 P. 1069]; *People* v. *Holt,* 25 Cal.2d 59, 63 [153 P.2d 21]), but urges that under a charge of assault with a deadly weapon probable danger of less degree than great bodily injury will justify the exercise of the right of self-defense. Although the distinction contended for by defendant appears to have been

made in a few states, the great weight of authority is to the contrary and is in accord with the California decisions which have approved similar instructions in cases where the accused was charged with felonious assault. [Citations.]"

*People* v. *Ranson,* 119 Cal.App.2d 380, 386 [259 P.2d 910] : "Self-defense is a question of fact and requires in the actor a real fear of serious bodily injury and an appearance of danger of such injury which would arouse such fear in the mind of a reasonable man. 'It must appear not only that he believed himself in such peril, but that, as a reasonable person, he had sufficient grounds for his belief.' (13 Cal.Jur., Homicide, § 42, p. 638.)"

Volume 14, California Jurisprudence 2d, section 226, page 471: "The justification of self-defense requires a showing that defendant was actually in fear of his life or of serious bodily injury and that the conduct of the other party was such as to produce that state of mind in a reasonable person. Thus, it is not enough that there existed in the mind of the defendant a belief that he was in actual peril. It must also appear that, as a reasonable person, he had sufficient grounds for his belief."

The record makes it quite apparent that the trial judge was justified in concluding that defendant was not in great danger and that she was not justified in believing herself to be in such danger; that the claim of self-defense was not established. Certainly it was not proved as a matter of law.

The judgment and order denying motion for new trial are affirmed. The appeal from order denying probation is dismissed.

Fox, P. J., and Herndon, J., concurred.