[Crim. No. 12441. Second Dist., Div. One. July 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST D. OWENS, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was found guilty of assault with a deadly weapon (§ 245, Pen. Code) ; his motion for a new trial was denied. Thereafter criminal proceedings were adjourned and defendant was remanded to the Department of Corrections for diagnosis and treatment (§ 1203.03, Pen. Code). Returned to the superior court, defendant renewed his motion for new trial which was denied. No finding on the prior felony conviction (§ 12020, Pen. Code) was made. Defendant was sentenced to the state prison. He appeals from the judgment.

In the early morning hours of June 30, 1965, defendant and one Coran, inmates in the county jail, were working the same shift in the main kitchen. For two weeks they had lived together in the same dormitory and there had been no ill feelings between them, although they had had minor arguments. Working on opposite sides of a grill located in the middle of

the counter in the kitchen area preparing food, they got into an argument over the preparation of additional food. Others were working in the area but Coran remembered only Johnson, who was washing dishes. Bruner had been cleaning up in the freezer compartment and ''Jake,'' a civilian cook, was in charge of the area. Defendant considered himself Coran's supervisor, ''pusher'' or ''head man''; he told Coran not to prepare certain foods. Coran, who did not feel that defendant was his superior, ignored his instructions. Defendant asked him if he ''had something on [his] chest that [he] wanted to get off''; Coran refused the challenge and continued to work on the grill. He then felt a ''throb'' in his side and as he turned, saw that defendant had a knife in his hand which he pulled out of his side. Coran was bleeding from his left side. Defendant told him he would ''kill him''; Coran ran to the control booth where he informed a deputy sheriff what had happened. He was taken to the County General Hospital where the wound was closed requiring 12 to 15 stitches. The stab was accomplished in one knife thrust. The knife was used in the kitchen for cutting vegetables; Coran had seen it earlier, around 3 a.m., when it was being used by someone to cut tomatoes. He identified the knife as similar to Exhibit 2. Coran is right handed.

Defendant testified that Coran became angry when he instructed him to remove some wieners (characterized as ''trash and freight'') from the grill so that he could cook some eggs for diabetic inmates; he laughed at Coran and as he turned he saw a knife swinging at him and ducked, grabbing Coran's arm. Coran hit him in the face, and in the struggle to get the knife away Coran got stuck in the side with it; he saw the knife enter Coran's shirt and Coran bleeding. After the knife fell to the floor he picked it up and put it beneath the counter area. The knife was one that he had checked out from the control center at the cook's request. He had arguments with Coran previously. He had worked in the kitchen area longer than Coran and considered himself to be his superior and felt responsible for activities in that area; Coran was a ''server.''

John Bruner, working as a ''trusty waiter,'' testified that at approximately 4 a.m. he was mopping the floor in the kitchen area. He saw Coran with a knife and defendant try to take it from him; they were tussling for the knife when Coran was cut. He was 4½ feet behind defendant. After the incident he was questioned by several deputy sherifffs, and he denied seeing or hearing anything; later he told the officers he saw

Coran run for a knife and then saw defendant grab the knife and stab Coran. He denied telling Detective Best that he had known defendant for 15 years or that he had dated defendant's sister.

On rebuttal Deputy James testified that around 4:25 a.m. on June 30, 1965, after Coran was taken to the hospital, he talked to Bruner; Bruner told him "I didn't see anything." Two hours later the deputy heard that Bruner had seen something, and again questioned him; Bruner told him that he did not actually see what happened. One and one-half hours after that, a third conversation took place wherein Bruner told the deputy that he saw Coran run toward a knife, grabbing at it; that defendant grabbed it and swung it at him with an upward motion, stabbing Coran. Detective Best testified that twice he talked to Bruner a week after the incident; Bruner told him that an argument had developed over the preparation of steak, both reached for the knife but defendant picked it up with his left hand and swung, thrusting it into Coran's left side; Bruner told him he had known defendant for 15 years on the street and had dated his sister.

The court called as its own witness Deputy Elder who testified that he found the knife under the grill and that it was not bloody. Received in evidence were five photographs showing the wound and body location (Exh. 1); the knife (Exh. 2) and a diagram (Exh. 3) used by both parties to show where each was working in relation to other objects in the kitchen area. The record shows that defendant also demonstrated to the judge their respective positions during the fight.

Appellant claims error in the denial of his motion for new trial. His first motion for a new trial on the ground of newly discovered evidence was made three weeks after the trial of the cause, on November 30, 1965; upon his return to the superior court by the Department of Corrections, he renewed his motion on April 19, 1966. Both motions were denied.

 The granting or denial of a motion for new trial on the ground of newly discovered evidence is a matter within the sound discretion of the trial court (*People* v. *Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427]); such motions are looked upon with disfavor (*People* v. *Yeager,* 194 Cal. 452, 491 [229 P. 40]) and unless there is a clear showing of an abuse of discretion this court will not interfere with the trial court's ruling thereon. (*People* v. *McGarry,* 42 Cal.2d 429, 432-433 [267 P.2d 254]; *People* v. *Butts,* 236 Cal.App.2d 817, 826-827

[46 Cal.Rptr. 362]; *People* v. *Schmidt,* 226 Cal.App.2d 88, 92-93 [37 Cal.Rptr. 785]; *People* v. *Roberts,* 213 Cal.App.2d 387, 396 [28 Cal.Rptr. 839]; *People* v. *Luporini,* 206 Cal.App.2d 87, 92 [23 Cal.Rpt. 179]; *People* v. *Gaines,* 204 Cal.App.2d 624, 628-629 [22 Cal.Rptr. 556].)

Section 1181, subdivision 8, Penal Code, in pertinent part provides that the court may, upon defendant's application, grant a new trial. "8. When new evidence is dicovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defndant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable."

The rule relative to the granting of a motion for new trial is set out in *People* v. *Williams,* 57 Cal.2d 263, at page 270 [18 Cal.Rptr. 729, 368 P.2d 353]: "To entitle a party to have a new trial on this ground [newly discovered evidence], 'it must appear,—"1. That the evidence, and not merely its materiality be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits."' (*People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]; *People* v. *McGarry, supra,* at p. 433; People v. *Sutton,* 73 Cal. 243, 247 [15 P. 86].)"

The first motion was made in the following manner. Mr. Lenoir, counsel for defendant, advised the trial judge that he had "discovered certain evidence that I wish I had had at the time of trial"; that he "had word," although he did not speak to the person personally, that the head cook (Jake), while not in the kitchen at the time of the altercation, knew defendant was, in fact, cooking eggs; and that he spoke to defendant's sister and "she doesn't even know" Bruner. The motion for new trial was so poorly made that the judge even failed to recognize it as such. After the deputy district attorney said, "Has the court ruled on the motion for new trial as yet?" the judge in turn asked, "Was there a formal motion?" Upon being told that there was, the judge said,

"For the record, then, the motion will be denied." At no time, neither then nor when defendant renewed the motion in April 1966, did he offer any affidavit or other writing setting forth anything of an affirmative nature showing that the facts of which he spoke constituted newly discovered evidence, he had personal knowledge thereof, the same was material and not cumulative, it was such as to render a different result probable on retrial and he made reasonable effort to produce it at the trial. On a renewal of the motion on Apirl 19, 1966, Mr. Lenoir said, ". . . I have learned from Mr. Owens that we are able to locate one witness who can verify what Mr. Owens testified to relative to whether he was cooking some eggs." The court properly stated, "Well, it seems to me that that would not be timely. I have no affidavits of that. I have no knowledge as to who it is or precisely what the person would testify to. This matter has been pending before the Court since August 17, 1965, and it would seem to me that it is a little late for this to come to me at the present time. The motion for new trial will stand denied."

There was no showing before the trial judge that defendant "could not with reasonable diligence have discovered and produced" the "newly discovered" evidence at the time of trial. (*People* v. *Williams*, 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].) Nor does he now make such a showing by his counsel's assertion "It certainly is possible that the appellant could have used reasonable diligence and still have not been able to come up with this new evidence." It is well settled that one who relies upon the ground of newly discovered evidence to sustain his motion for a new trial " 'must have made reasonable effort to produce his evidence at the trial, and . . . he will not be allowed a new trial for the purpose of introducing evidence known to him and obtainable at the time of trial, or which would have been known to him had he simply exercised reasonable effort to present his defense.' (*People* v. *Shepherd*, 14 Cal.App.2d 513, 518 [58 P.2d 970]; also *Dasso* v. *Bradbury*, 39 Cal.App.2d 712, 717 [104 P.2d 128].)" (*People* v. *Williams*, 57 Cal.2d 263, 273 [18 Cal.Rptr. 729, 368 P.2d 353].) Surely at the time of trial defendant knew the identity and whereabouts of Jake, the civilian cook in charge of the kitchen area. Defendant testified that having worked in the kitchen area longer than Coran he was Coran's superior which would indicate that indeed he knew the civilian cook in charge. Moreover, Jake's identity and whereabouts were known at the time of trial, for several

witnesses testified thereto. As to defendant's sister, who would better know her identity and whereabouts than defendant.

On the issue of the materiality of that which appellant claims to be "newly discovered evidence," it is obvious from the trial judge's statement at the time he determined defendant's guilt that his concern was not what the parties were cooking on the grill at the time of the altercation but who picked up the knife and how Coran was stabbed with it. How or over what the argument started is not material for it was conceded by both the victim and the defendant that an argument occurred which led to the altercation. The judge reconstructed the fight from defendant's demonstration, the diagram and the testimony of both parties; he also commented that he did not understand why defendant picked up the knife and put it back where it was normally kept, making no attempt to explain it. We fail to see how the testimony of Jake, who admittedly was not in the kitchen at the time of the altercation, could be material to the issue before the court. That defendant was cooking eggs on the grill just prior to the altercation could be of little or no significance to the ultimate outcome of the case. (*People* v. *Moten,* 207 Cal.App.2d 692, 697-698 [24 Cal.Rptr. 716].) Further, it cannot be ascertained from defense counsel's statement to the trial judge whether Jake's so-called knowledge that "defendant was, in fact, cooking eggs" is based upon hearsay or upon his own observation it having been conceded that Jake was not in the kitchen at the time of the fight; nor can it be ascertained what period of time elapsed from when he left the kitchen area to when the altercation occurred. There is nothing from which the trial judge could have concluded that such evidence is of the type that would render a different result probable upon a retrial of the cause. The same is true of defendant's sister's purported denial that she knew Bruner and had been out on a date with him. Detective Best's testimony on rebuttal that Bruner told him he had previously dated defendant's sister went only to the question of Bruner's bias or prejudice. Bruner denied he made such a statement to Best, but he did not testify that he had ever been out with her.

On both motions in the lower court defendant failed to meet the burden placed on him by section 1181, subdivision 8, Penal Code. On each occasion, only the most informal statement was made by defense counsel in connection with the purported "newly discovered evidence." His references to what he had

learned were vague, inconclusive and wholly unsupported by either affidavit or declaration as required by statute (§ 1181, subd. 8, Pen. Code), and there was ample time between defendant's conviction and the day he made his first motion for counsel to properly prepare affidavits; there was also a period of four and one-half months between the denial of his motion and the renewal thereof. We find no abuse of the trial court's discretion in connection with either ruling.

█ Appellant's second contention is that being punished by a court of law, after having been placed in solitary confinement for the same incident, constitutes double punishment. All we know of defendant's having been placed in solitary confinement is his own statement not under oath to the court when he appeared for sentence that "disciplinary action has been taken against me once in this matter when it was supposed to have happened, and I was put in Siberia, in the hole, and it seems like that is double jeopardy. . . ." However, assuming that such disciplinary action was taken by jail officials to punish defendant for an infraction of jail regulations, such action does not constitute a bar to a state prison sentence for the same breach, when the same constitutes a crime.

Appellant asks this court "in the interests of justice" to repudiate the interpretation of section 654, Penal Code, given by the court in *People* v. *Ford,* 175 Cal.App.2d 37 [345 P.2d 354], and like cases. In *Ford,* prior to defendant's conviction of possession of illegal drugs while in prison, and as part of prison discipline, defendant was placed in solitary confinement for 29 days; upon conviction he was sentenced to the state prison. The court refused to hold that this constituted double punishment. The court reasoned that some means of summary enforcement of reasonable rules is essential to the proper operation of a prison; and since section 654, Penal Code, was designed to deal only with judicial actions, it ruled that the period of solitary confinement did not act as a bar to a prison sentence by the court. "To so extend the rule as to make administrative discipline a bar to criminal prosecution would lead to results clearly not contemplated by the Legislature." (*People* v. *Ford,* 175 Cal.App.2d 37, 39 [345 P.2d 354] [pet. for hearing denied by Supreme Court]; *People* v. *Clark,* 241 Cal.App.2d 775, 779-780 [51 Cal.Rptr. 7].) Appellant has failed to offer any legitimate basis in principle or on the facts of the instant case to warrant overruling *Ford.* Such action on our part would tend to hamper the efforts of prison officials to maintain order and discipline within penal institu-

tions. It would require them to withhold enforcement of prison rules and regulations pending criminal prosecution for what might be some months, for fear that disciplinary action of a violent inmate would prevent his prosecution for a serious felony. This could only result in chaos and uncertainty in the efforts of authorities to keep order in the prison.

Finally, appellant makes an unsupported argument that the evidence is insufficient "to satisfy the People's burden of proof beyond a reasonable doubt." He neither points out in what regard the evidence is not sufficient, nor cites authority in support of his contention. The trial judge upon hearing the evidence had the alternative of believing Coran or the defendant and Bruner. It is apparent from the trial judge's statement at the time he found defendant guilty that he determined the truth of what occurred by reconstructing the altercation through defendant's demonstration, the physical facts, the diagram, the unexplained location of the knife after the fight and the statements of both defendant and the victim. He concluded that the victim's version of what occurred was in fact a true recital of how he was stabbed. It appears to us, on the face of defendants testimony, that the judge was warranted in believing Coran's story. One witness, if believed by the trier of fact, can provide sufficient proof of an assault. (*People* v. *Kersey,* 154 Cal.App.2d 364, 367 [316 P.2d 52]; *People* v. *Pullins,* 95 Cal.App.2d 902, 903-934 [214 P.2d 436]; *People* v. *Luporini,* 206 Cal.App.2d 87, 91-93 [23 Cal.Rptr. 179].) Appellant is in error as to this court's function on review; the test of sufficiency of the evidence is not whether defendant's guilt has been proved beyond a reasonable doubt but whether there is sufficient evidence upon any hypothesis to support the conclusion of the trier of fact. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Rush,* 180 Cal.App.2d 885, 886 [4 Cal.Rptr. 853].) The trial judge simply failed to believe the defendant's claim of self-defense. (*People* v. *Gaeta,* 178 Cal.App.2d 830, 832 [3 Cal. Rptr. 384].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 9, 1967.