[Crim. No. 13727. Second Dist., Div. Two. July 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT GEORGE AVINA, Defendant and Appellant.

William H. Colvin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jerold A. Prod, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant Avina, although charged jointly with two other defendants on a number of counts, was separately tried and was convicted by jury of kidnaping for the purpose of robbery in violation of Penal Code, section 109 on one Louis Burrows, same offense in respect of one Harry Jameson, and armed robbery in respect of Harry Jameson.

He was sentenced for the term prescribed by law on count II, to wit: kidnaping for the purpose of robbery of Harry Jameson. The execution of sentence was stayed on counts I and III pending any appeal, during the service of any sentence pronounced by the Adult Authority on count II. On completion of sentence on count II, the stay was to become permanent. The appeal is from the judgment of conviction.

Appellant of Latin descent, testified he was on the Long Beach Pike with two friends, to wit: Hernandez and Gonzales and the sister of Hernandez, on July 20, 1966, at the time the alleged crimes were committed. The said three persons testified in corroboration. Appellant admitted he knew Zamora, one of the two codefendants with whom he was charged, who testified that he was present at the time and took part in the commission of said crimes.

Appellant urges reversal because there was a lack of due process in considering his motion for a new trial, and also because the lineup procedure and the identification process stemming from the lineup was so tainted with unfairness as to deny him a fair trial. (*People* v. *Caruso,* 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336].)

It is settled, of course, (*People* v. *Feggans,* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]), that law (*United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87

S.Ct. 1951]) holding that a defendant is entitled to the assistance of counsel, has only prospective application. Appellant urges, however, under *Caruso, supra,* page 184, that although this is admittedly a pre-*Wade* and *Gilbert* case, he may invoke the exclusionary concept of *Wade* and *Gilbert,* if he can demonstrate that the lineup "resulted in such unfairness that it infringed his right to due process." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1204, 87 S.Ct. 1967].) The evidence at bench, however, is not similar to that in *Caruso, supra.* There is no showing of any unfairness in the lineup procedure or any taint resulting therefrom which infected the in-court identification.

Appellant's summary of the salient facts, as culled from his brief, is substantially as follows:

On July 20, 1966, a man rang the doorbell of the Harry Jameson residence in Beverly Hills. An employee of Mr. Jameson, Mr. Louis Burrows, observed the man for four or five seconds through a 12-inch glass panel on the front door The man at the door had a basket of fruit in his hands. Burrows then went out the back door around the house and approached the man and observed him for another few seconds. When Burrows reached for the fruit, the man shifted the basket and displayed a gun. Burrows saw a gun, and under orders, led the man into the house through the kitchen door and into Mrs. Jameson's bedroom. By voice only was he able to tell that there were two men.

Burrows' testimony puts the man he identified as appellant in Mrs. Jameson's bedroom and the "second voice" in Mr. Jameson's bedroom.

Mr. Jameson was unable to identify anyone but he did testify that the man who took him from Mrs. Jameson's bedroom to open the safe had what looked like blond hair.

The intruders made off with from $350 to $400 and jewelry worth approximately $300,000.

On or about September 20, 1967, Burrows attended a lineup at the Beverly Hills police station, which was the third lineup he attended. There were three people in this lineup. Burrows was pretty sure he could identify one of the three as the man who came to the door on July 20, 1966. The police officer in charge of the lineup ordered appellant to repeat certain words.

The foregoing, cited to show the paucity of evidence upon which identification was made is, however, further supple-

mented by the record. It shows that when Burrows observed appellant at the front door, he looked through a glass door and looked through a glass panel at the side of the door and observed that he was wearing a white shirt, dark trousers, dark shoes and had a basketful of fruit in his hand, and that Burrows did not open the front door, but went out a back door to the front and walked up to appellant, and appellant told Burrows to "Open the damn door" and that, when Burrows started to reach for the fruit, appellant shifted the basket of fruit from his right hand to his left and pulled out an automatic, and that Burrows, with appellant following him, walked back, and entered the house through the kitchen and then went to the bedrooms, during which time appellant asked how many people were in the house. Burrows replied "Mr. and Mrs. Jameson," and appellant directed Burrows into Mrs. Jameson's bedroom. In addition, after Burrows and the Jamesons were forced to lie down on the bed, Burrows heard a male voice different from that of appellant asking Mrs. Jameson "Where are the two rings?" That the second voice made a number of threats and issued some instructions, at which time Burrows heard appellant's voice saying "Are we going to take the hi-fi?" Burrows also testified that he heard appellant arguing with the second voice, whether they should tie up the victims.

The record also shows that appellant was arrested on September 9, 1966, and that on the same day a lineup was conducted consisting of appellant and three or four others, all but one of Latin descent, and that all were about the same height, weight and age.

There is no showing that Burrows received suggestions or was assisted in any way by the police or anyone in picking out appellant. It is not contradicted that Burrows at the lineup on September 9 recognized appellant immediately and personally requested the officer to have the man who was second from the right in the lineup say "This is a stick-up" and "Where are the people of the house?" In addition, the record shows that at another lineup, Burrows, also without suggestion or instruction from anyone, picked out the man on the left (appellant) and requested the officer to have the man on the left repeat the words "are we going to take the hi-fi?" and "where is your money?" Burrows did not request statements of any of the other persons in the lineup. Burrows testified that appellant looked exactly like the man he had seen, then asked to hear him speak and recognized his voice,

although there was nothing distinctive about it, that he was "sure he was the man, but there was doubt because there are always one or two people that look alike."

Although appellant disputes that the lineup was not composed of appellant and three or four others, but was composed only of appellant, Zamora and an unknown white male, he does not dispute that they were all about the same height, weight and age, or that the only one in the lineup who was requested to speak, was appellant, and admits that he was asked to repeat and did repeat the phrases "are we going to take the hi-fi" and "where is your money?"

It is established that the strength or weakness of an identification are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration of the jury. (*People* v. *Mullins*, 145 Cal.App.2d 667, 670 [303 P.2d 58]; *People* v. *Lindsay*, 227 Cal.App.2d 482, 493-494 [38 Cal.Rptr. 755].)

Appellant argues the fact that when Zamora was in the lineup with appellant, Zamora had the opportunity to call attention to appellant and had the motive to try to shift responsibility on him and that Burrows relied primarily upon appellant's voice. The record shows, however, that the jury was apprised that Zamora was in the lineup. It also shows that the witness relied on other factors; felt certain of his identification, and that he had previously looked at many pictures and been to lineups before identifying appellant. Included in his testimony are his qualifying statements.

The witness stated his purpose in asking for statements to be made as follows:

"Q. Was there some reason you wanted him to speak in addition to this recognition of yours?

"A. I wanted to make sure that he was the right fellow."

Under circumstances where voice recognition is only one factor of a lineup identification, and where the description of the procedure is fully brought out at trial, it does not appear that the statements repeated in the lineup by a suspect picked out by the witness were prejudicially suggestive and involuntarily compelled the witness' lineup identification.

The voice is "merely another identifying physical characteristic." (*People* v. *Ellis*, 65 Cal.2d 529, 535 [55 Cal.Rptr. 385, 421 P.2d 393].)

It is clear from the record that the voice recognition was

not the sole evidence of identity relied upon by the witness. (See *Annot*. Identification of Accused by His Voice, 70 A.L.R.2d 995.)

We hold there is no taint in the lineup procedure hereinabove outlined which prevented proper opportunity for identification at the lineup or which in any way infected the later, in-court identification.

At the time of the deliberation and before reaching a verdict, the jury requested that the testimony of Burrows, Jameson and appellant's alibi testimony be read to them. Included was Mr. Jameson's testimony of his impression that the person behind him at the safe he was required to open, had blond hair.

After verdict was rendered against him, appellant argued a motion for new trial on two grounds. The first was the matter of identification which has been disposed of.

■ The second was, there was available newly discovered evidence and some additional evidence known to Mr. Jameson which should have been brought out at the trial. This additional evidence consisted of a statement by Jameson to appellant's attorney, after verdict was in, that the second man was blond, that the first man who Burrows had seen looked more like Zamora than appellant, and that the second one resembled Hobson (also charged with these crimes) much more than appellant. Appellant argued further that Hobson had not been available for appellant's trial since Hobson was awaiting trial. After appellant's trial, Hobson pleaded guilty and was available as a witness. Appellant contends he was deprived of this witness.

Appellant stated to the court in support of his motion "... Mr. Hobson is willing to take the stand now and tell the truth about the matters, and this was not evidence that was available to Mr. Avina while the trial was going on. ..." Other than said statements, the trial judge was not advised by affidavit or otherwise what "telling the truth about the matters" would reveal. No alleged newly discovered evidence material to appellant's case was detailed, even orally. There was no showing that appellant made reasonable effort to produce Hobson's evidence, which may or may not have been known to him at the time of trial. (*People* v. *Williams*, 57 Cal.2d 263, 273 [18 Cal.Rptr. 729, 368 P.2d 353].) The record shows to the contrary, that appellant was aware of the things to which Hobson could testify. Conceding arguendo that Hobson's evidence may not have been available

to him during the time of trial and was material, such concession does not excuse appellant from presenting in detail and by affidavit what Hobson would testify to and that the expected newly discovered evidence was material. There was no showing that if the court would permit the evidence vaguely referred to, a different result was probable on retrial. (Pen. Code, § 1181, subd. 8; see *People* v. *Owens,* 252 Cal. App.2d 548, 552 [60 Cal.Rptr. 687].)

Appellant urges lack of due process because the trial judge did not appear to be gravely concerned with this part of the motion and did not comment upon it. The logical conclusion to us is not that it was an abuse of discretion to deny it without comment, but rather that the trial court regarded the showing made as unworthy of comment. (See *People* v. *Owens, supra,* at page 552.)

The granting or denial of a motion for new trial on the ground of newly discovered evidence is a matter within the sound discretion of the trial court. (*People* v. *Owens, supra,* 252 Cal.App.2d 548, 551.)

The judgment is affirmed.

Fleming, J., and Nutter, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 11, 1968.

*Assigned by the Chairman of the Judicial Council.