[No. C012079. Third Dist. Dec. 18, 1991.]

JESSE MANUEL GARCIA, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**Counsel**

Gerald L. Gleeson, Public Defender, and Edward Healey, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert Anderson, Acting Assistant Attorney General, Margaret Garnand Venturi and Alan Ashby, Deputy Attorneys General, for Real Party in Interest.

**Opinion**

**PUGLIA, P. J.**—Petitioner (defendant) seeks a writ of mandate commanding the respondent superior court to order the magistrate, a judge of the municipal court, to direct the People to conduct a "voice-only" lineup to ascertain if the victim of crimes charged against defendant can identify her assailant's voice from among the voices of defendant and others. We shall hold that it is within the discretion of the magistrate so to direct the People and we shall grant extraordinary relief accordingly.

On June 7, 1991, defendant was charged by a felony complaint filed in the municipal court with crimes allegedly perpetrated on April 15, 1991, to wit: kidnapping to commit robbery (Pen. Code, § 209, subd. (b)), robbery (Pen. Code, § 211), and being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)). (Further statutory references to sections of an undesignated code are to the Penal Code.) The complaint alleges Julia Marquez is the victim of the kidnapping and robbery.

The district attorney scheduled a physical lineup to be viewed by the victim. Defendant sought a protective order from the magistrate to limit the lineup to a "voice-only" lineup on the ground that a physical lineup held prior to a voice lineup would be unduly suggestive. The magistrate refused to issue a protective order on the ground the remedy for an unduly suggestive lineup is a "motion to strike the results of the lineup." Defense counsel

announced he would advise defendant not to participate in the scheduled physical lineup and the lineup was not held.

Defendant next moved the magistrate to compel the prosecution to conduct a "voice-only" lineup. Defendant attached to his motion a police report reciting that on June 5, 1991, the victim, Marquez, selected defendant's photograph in a lineup consisting of the photographs of six persons. The police report states: "[Marquez] looked at each individual picture, and then came back to the photograph [of defendant] in position #3 and told me, 'God, it really looks like him.' She said that his eyes, ear, nose, and adams apple [*sic*] are exactly like [those of the suspect] who had robbed her. She again stated, 'It really looks like the guy[] (while pointing to the [defendant's] photograph in position #3) [e]xcept he looks older now than he does in this picture. I believe it's him.' She went on to say, 'I haven't heard his voice, but if I hear his voice again, I can identify him for sure.' "

The police report states Marquez then signed the back of the photograph of defendant, writing, " 'I believe that it could be #3.' " The report indicates the investigating officer asked Marquez why she was uncertain. Marquez responded she was ". . . almost positive that it's the person depicted in the photograph #3, except the person looks older than in the picture. She again stated that his eyes are exactly as she remembers, when his sunglasses were pulled forward. She [was] almost positive that it is the person depicted in #3, but she wanted to hear his voice in order to make a positive identification."

The district attorney conceded that eyewitness identification is a material issue, but argued in opposition to defendant's motion that a compelled lineup is inappropriate because there is no reasonable likelihood of mistaken identification and that the magistrate has no authority to dictate the manner in which the prosecution must conduct a lineup. The district attorney agreed to conduct a physical lineup, but argued a voice lineup, far from resolving the identification issue, would actually create a greater chance of misidentification.

The magistrate ruled: "The Court finds that the Defendant . . . is entitled to a Lineup and one that includes a Voice Lineup. [¶] The Court further finds that there is no authority by which the Court can dictate the manner in which the Lineup is held. [¶] So long as the procedure is fair and does not suggest the identification of the suspect any Lineup would be proper. The crucial issue [is] whether or not the defendant was being singled out for identification such that his I.D. was a foregone conclusion. [Citation omitted.] [¶] Further, '[t]he voice is "merely another identifying physical characteristic." ' (*People* v. *Avina* [(1968) 264 Cal.App.2d 143, 147 (70 Cal.Rptr. 235)].) [¶]

At the hearing no evidence was presented that the picture or pictures [shown the victim in the photographic lineup] were used to prime the witness to identify the Defendant. (*People* v. *Feggans* [(1967) 67 Cal.2d 444, 449 (62 Cal.Rptr. 419, 432 P.2d 21)].) [¶] CONCLUSION: A lineup shall be held and the Court will not dictate its manner."

On July 25, 1991, at defendant's request, the respondent superior court issued an order prohibiting the prosecution from conducting any lineup involving defendant "pending resolution of defendant's petition" for extraordinary relief in that court. The superior court later entered a similar order staying the preliminary examination. Defendant filed his petition for writ of prohibition or mandate in the superior court on August 19, 1991. After a hearing, on September 12, 1991, the superior court denied defendant's petition, reasoning that the magistrate correctly determined he lacked authority to dictate the manner in which a lineup is conducted.

Defendant filed the instant petition for writ of mandate on October 11, 1991.[1] On October 17, 1991, we notified the parties the court was considering issuing a peremptory writ in the first instance and invited further opposition. We stayed further proceedings pending receipt of opposition and further order. We have considered the People's opposition and shall order a writ of mandate to issue.

Courts have considered voice lineups in different contexts (see, e.g., *People* v. *Ellis* (1966) 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393] [defendant's refusal to participate in voice lineup may be used against him at trial]; *People* v. *Avina* (1968) 264 Cal.App.2d 143, 147-148 [70 Cal.Rptr. 235] [physical lineup in which only defendant is asked to speak not impermissibly suggestive]; cf. *People* v. *Manson* (1977) 71 Cal.App.3d 1, 43-45

[1]Defendant does not satisfactorily deal with the issue of the adequacy of the remedy by appeal (see Code Civ. Proc., § 1086), simply asserting conclusionally the appropriateness of mandate "to rectify error 'before a constitutionally defective trial is undertaken.' " The People do not address the issue at all.

Code of Civil Procedure section 904.1 provides in part: "An appeal may be taken from a superior court in the following cases: [¶] (a) From a judgment, except . . . (4) a judgment granting or denying a petition for issuance of a writ of mandamus or prohibition directed to a municipal court or a justice court or the judge or judges thereof which relates to a matter pending in the municipal or justice court. However, an appellate court may, in its discretion, review a judgment granting or denying a petition for issuance of a writ of mandamus or prohibition . . . upon petition for an extraordinary writ."

Neither party cites this provision. We express no opinion whether it applies to a matter pending before a magistrate who is, coincidentally, a judge of the municipal court (see *People* v. *Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651], overruled in *Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352]; *People* v. *Randall* (1973) 35 Cal.App.3d 972, 974-976 [111 Cal.Rptr. 590]; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Criminal Procedure § 1809, pp. 2142-2143).

[139 Cal.Rptr. 275] [denial of defendant's motion to conduct a "screaming lineup" to test ability of witness to identify screams of particular person not error]). However, only one case to our knowledge has considered whether a court may compel the prosecution to conduct a pretrial voice lineup. In *People* v. *Vallez* (1978) 80 Cal.App.3d 46 [143 Cal.Rptr. 914], the People before trial had conducted a "voice tape lineup" (*id.*, at p. 53) at which a tape recording containing six different voices was played to crime victims who had been attacked in the dark and blindfolded by their assailant. On appeal, defendant contended the trial court erred in denying his pretrial motion to conduct his own voice lineup. The court of appeal tacitly assumed the trial court could have ordered such a lineup in appropriate circumstances, but upheld the court's ruling on the ground the motion, filed one week before trial, was untimely. (*Id.*, at pp. 55-56.)

The *Vallez* court also rejected defendant's contention the voice lineup conducted by the People was unduly suggestive although it noted there was a difference in the "tone quality" of defendant's recorded voice from that of the other voices in the lineup. (80 Cal.App.3d at pp. 54-55.) The court noted that recorded voice lineups present special problems because speakers can modify the tone, pitch, volume, speed or accent of their voices, and the equipment used to record voices is subject to technical variables. As a consequence, special precautions should be taken to avoid misidentification, such as using voices similar to that of the suspect in tone, pitch, volume and accent, insuring uniform sound quality, and conducting the lineup as soon as possible. (*Id.* at pp. 54-55.)

Although *Vallez* is informative, it is not dispositive of the issue whether a magistrate or trial court may compel a "voice-only" lineup.

In our view, *Evans* v. *Superior Court* (1974) 11 Cal.3d 617 [114 Cal.Rptr. 121, 522 P.2d 681] is determinative of that issue. In *Evans* the court held the trial court had discretion to order the prosecution to conduct a physical lineup in specified circumstances. The defendant, charged with robbing a restaurant employee at gunpoint, had been arrested while fleeing the crime scene. Within 15 minutes of the robbery, an eyewitness to the robbery observed defendant as he sat in a police car and told the police he appeared to have the same physical build as the robber. At the preliminary hearing, the eyewitness testified and identified the defendant. The defendant then moved for a physical lineup prior to trial. The trial court acknowledged it would be in the interests of "fair play" to grant the motion because "an in-court identification of a defendant seated at a counsel table is inherently suggestive." (*Id.*, at p. 621.) However, the trial court denied the motion because it believed it lacked discretion to order a lineup. (*Id.* at pp. 620-621.) In

mandating the trial court to reconsider defendant's motion, the Supreme Court explained: "Evidence of identification in criminal proceedings is not only material but is also frequently determinative of an accused's guilt. No reason appears why such evidence should not be discoverable by an accused in cases wherein the People are afforded an opportunity to require its disclosure. [Citation.] . . ." (*Id.* at p. 623.)

*Evans* deals with the scope of criminal discovery available to a defendant. As formulated by the court, "the precise question . . . raised is not whether the People's affirmative evidence of identification is so impermissibly unfair that its receipt would infringe an accused's rights of due process. The question is whether *prior* to the in-court receipt of evidence of identification the accused can insist that procedures be afforded whereby the weakness of the identification evidence, if it is in fact weak, can be disclosed. The question is thus not one of fairness in receiving evidence but rather one of fairness to an accused on pretrial discovery." (Original Italics.) (11 Cal.3d at pp. 621-622.)

The holding in *Evans* is grounded upon due process. "It is indisputable, however, that when the People seek to deprive an accused of his liberty based on identification evidence such can only be done by procedures which accord to him due process of law. (*People* v. *Caruso* (1968) 68 Cal.2d 183, 188-190 [65 Cal.Rptr. 336, 436P. 2d 336].)" (11 Cal.3d at p. 621.)

The relationship of due process to criminal discovery was amplified by the United States Supreme Court in *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208]) from which the *Evans* court quoted (11 Cal.3d at p. 623): " 'although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . , it does speak to the balance of forces between the accused and his accuser. . . . We do not suggest that the Due Process Clause of its own force requires Oregon to adopt [discovery proceedings]. . . . But we do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses. ([*Wardius* v. *Oregon, supra,* 412 U.S.] at pp. 474-475 [37 L.Ed.2d at pp. 87-88].)' " (Fn. omitted.)

In *Evans* the People had not conducted a lineup. Thus, by his motion, the defendant sought "to compel the People to exercise a duty to discover material evidence which does not now, in effect, exist." (11 Cal.3d at p. 625.) However, it is of no significance that the state may have no witnesses who have viewed defendant in a lineup. What is of crucial significance in

terms of due process is that "the People are in a position to compel a lineup and utilize what favorable evidence is derived therefrom . . ." (*Id.* at p. 623.) Therefore "fairness requires that the accused be given a reciprocal right to discover and utilize contrary evidence" (*Ibid.*) even though it can be said such evidence "does not now, in effect, exist." (*Id.* at p. 625) Under these circumstances, denial of discovery "would be the same as if existing evidence were intentionally suppressed. It is settled that the intentional suppression of material evidence denies a defendant a fair trial. (*Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218-219, 83 S.Ct. 1194].)" (*Id.* at p. 625.)

In *People* v. *Ellis, supra,* 65 Cal.2d 529, the victim of an assault with intent to commit rape informed police she could identify her assailant's voice. Defendant and the victim were placed in adjoining rooms and defendant was asked to repeat phrases recited by the police. Defendant refused to cooperate and remained silent. (At pp. 532-533.) At trial, police officers testified that defendant refused to participate in the voice identification test and the prosecutor commented on defendant's refusal to the jury. On appeal, defendant contended that testimony of, and the prosecutor's comments on, his refusal violated his constitutional privilege against self-incrimination. The Supreme Court held evidence obtained from a voice identification test is not testimonial communication and is therefore not within the privilege against self-incrimination. (65 Cal.2d at pp. 536-537.)[2]

Because the prosecution may compel defendant to participate in a voice lineup or use his refusal to cooperate as evidence against him (*People* v. *Ellis, supra,* 65 Cal.2d at pp. 534-536), due process requires the defendant be extended a reciprocal right to a voice lineup. This conclusion is supported by recent developments in criminal discovery. The voters adopted Proposition 115 at the June 5, 1990, primary election. That initiative measure added provisions to the Constitution and statutes which provide for reciprocal discovery in criminal cases. Proposition 115 added section 30, subdivision (c) to article I of the Constitution which provides that "discovery in criminal cases shall be reciprocal in nature" as provided by statute. To implement constitutionally mandated reciprocal discovery, Proposition 115 added chapter 10, to part 2, title 6 of the Penal Code (§§ 1054-1054.7). Section 1054, subdivision (e) provides that: "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, *or as mandated by the Constitution of the United States.*" (Italics added.)

[2]The court went on to hold that since police had advised defendant of his right to remain silent prior to his refusal to cooperate in the voice identification test, his refusal might have been the result of the police warning and therefore could not be used as evidence against him. (*Ellis, supra,* 65 Cal.2d at p. 539.)

Responding to a challenge to the new discovery statute on the ground it unduly circumscribed discovery mandated by due process, the Supreme Court, citing section 1054, subdivision (e), noted the statute "contemplates disclosure *outside* the statutory scheme pursuant to constitutional requirements as enunciated in *Brady* [v. *Maryland*], *supra*, 373 U.S. 83, and its progeny." (*Izagaga* v. *Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304]; original italics.) Moreover, the court held that "[t]he prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. Such obligations exist whether or not the state has adopted a reciprocal discovery statute. Furthermore, if a statutory discovery scheme exists, these due process requirements operate outside such a scheme." (54 Cal.3d at p. 378; original italics.)

*People* v. *Bustamante* (1981) 30 Cal.3d 88 [177 Cal.Rptr. 576, 634 P.2d 927], cited by the People, does not compel a different result. In *Bustamante*, the court was concerned with the issue whether defendants have a right under the California Constitution to counsel at preindictment lineups. The court noted in its discussion that defense counsel plays a very limited role during the lineup and may not compel the prosecution to conduct the lineup in a particular manner. (*Id.* at p. 99, fn. 7.) This observation is directed merely at the procedure employed in conducting the lineup, and is equally as apt to physical lineups as it is to voice lineups. A defendant may not direct the prosecution how to conduct a voice lineup. But because the People may use voice lineups as discovery tools, so also, on proper showing, may the defense.

In their opposition to this petition, the People do not contest defendant's contention that the magistrate had discretion to grant defendant's motion for a voice lineup. To the contrary, the People contend the magistrate exercised his discretion, and properly so, to deny defendant's motion for a "voice-only" lineup and ordered instead a combined physical and voice lineup. Although conceding eyewitness identification is a material issue in this case, the People endeavor to explain the magistrate's ruling as a rejection of defendant's claim a "voice-only" lineup would tend to resolve a reasonable likelihood of mistaken identification. The People so conclude because the magistrate rejected defendant's claim that the People "primed" the victim to identify defendant in a physical lineup by first showing her a photographic lineup including defendant's picture. According to the People, "[t]he Magistrate thus found, in effect, that because the second prong of the *Evans* test [i.e., a voice-only lineup would tend to resolve a reasonable likelihood of mistaken identity] had not been met, he was without jurisdiction to issue an

order for a voice-only lineup. [¶] The magistrate's order demonstrates just as unequivocally, however, that he did find that the second prong had been met with respect to a [physical] lineup *which included a voice test,* and that he therefore had jurisdiction to issue an order calling for a [physical] lineup which included the voices of the participants." (Italics added.)

Assuming, arguendo, that this is a possible interpretation of the magistrate's written ruling, we are not convinced it is the more reasonable reading. The magistrate's ruling states, ". . . there is no authority by which the Court can dictate the manner in which the Lineup is held." This ruling appears clearly to be referable to the district attorney's argument that the magistrate lacked authority to order a voice-only lineup. Moreover, the magistrate's comments at the hearing indicate he believed he lacked authority to order a voice-only lineup. In addition, we are concerned that the magistrate ordered a physical lineup when such a procedure had not been requested by the defendant. Defendant expressly requested that any order compelling a lineup be limited to a voice lineup.

Under *Evans,* the defendant's right to compel a lineup is not absolute. It arises "only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve. [Fn. omitted] [¶] The questions whether eyewitness identification is a material issue and whether fundamental fairness requires a lineup in a particular case are inquiries which necessarily rest for determination within the broad discretion of the magistrate or trial judge. [Citations.] . . . [A]s in all due process determinations, the resolution here to be made is one which must be arrived at after consideration not only of the benefits to be derived by the accused and the reasonableness of his request but also after considering the burden to be imposed on the prosecution, the police, the court and the witnesses." (11 Cal.3d at p. 625.) Moreover, "[t]he broad discretion vested in a trial judge or magistrate includes the right and responsibility on fairness considerations to deny a motion for a lineup when that motion is not made timely." (*Id.* at p. 626.)

It is apparent from the record that the magistrate, erroneously believing it to be beyond his authority, did not exercise his discretion in ruling on defendant's motion for a voice-only lineup. Accordingly, the magistrate must reconsider his decision denying defendant's motion. Adapting the *Evans* criteria to the instant facts, we conclude the magistrate's discretion should be informed by consideration whether voice identification is a material issue and there is a reasonable likelihood of a mistaken identification which a voice lineup would tend to resolve.

We do not hold that, should the magistrate decide to compel a voice-only lineup, such a lineup must be conducted prior to any physical lineup

conducted by the prosecution. Presumably, defendant's motion for a voice-only lineup contemplates a procedure where the victim would listen to disembodied voices, either reproduced by recording or delivered live by speakers physically concealed from the victim's view. Under this procedure, a physical lineup, whether conducted before or after a voice lineup, could have no impermissibly suggestive effect on any identification made in the voice lineup. And we note again that the magistrate rejected defendant's contention that a physical lineup would be impermissibly suggestive and give rise to a substantial likelihood of irreparable misidentification. (See *People* v. *Vallez, supra,* 80 Cal.App.3d at p. 54.)

Having complied with the procedural requirements delineated in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 843], we are authorized to issue a peremptory writ of mandate in the first instance.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying defendant's petition for writ of mandate and to enter an order granting that petition in accordance with the views expressed herein. Upon this decision becoming final, the stay previously issued is vacated.

Marler, J., and Raye, J., concurred.